UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN GARDNER, IV and | : | |
| DAVID GARDINER | : | |
|     Plaintiffs | : | |
| v. | : | C.A. No. 19-cv-00139-JJM-PAS |
| | : | |
| JAMES R. LARKIN, individually and as | : | |
| managing member of Blushield Window | : | |
| Systems, LLC; BLUSHIELD WINDOW | : | |
| SYSTEMS, LLC and JOHN DOES 1-10 | : | |
|     Defendants, | : | |
|     Counterclaimants, and | : | |
|     Third Party Plaintiffs, and | : | |
| | : | |
| v. | : | |
| | : | |
| CUSTOM BUILT, INC., | : | |
| CUSTOM BUILT WINDOWS AND | : | |
| DOORS MANUFACTURING, LLC, | : | |
| JOHN GARDNER, III, | : | |
|     Third Party Defendants | : | |
| | : | |
| and | : | |
| | : | |
| JOHN GARDNER, IV, and | : | |
| DAVID GARDINER | : | |
|     Counter-defendants | : | |

**JAMES R. LARKIN'S MEMORANDUM IN RESPONSE
TO ORDER DATED JUNE 13, 2019 REGARDING
<u>NOTICES OF ELECTION TO PURCHASE SHARES</u>**

Plaintiffs advance an interpretation of Rhode Island's Shareholder Election Statute, RIGL § 7-1.2-1315 ("Election Statute") that would allow a 50/50 partner to elect to buy out his partner at any time simply by engaging in inequitable and oppressive conduct. According to the Gardners, if an equal owner objects to being frozen out or seeks an equitable remedy for deadlock, then he loses his shares. Plaintiffs' reading of the Election Statute is neither supported by the text, nor does it comport with any sensible reading of the Statute, its purpose, or principles

of equity. Plaintiffs either embarked on a deliberate scheme of oppressive conduct, or they are desperately falling back on a tortured interpretation of the Statute now that their bad acts have been exposed. Either way, no person should be benefitted from his own wrong.

I. THERE IS NO TEXTUAL BASIS IN THE STATUTE FOR THE GARDNERS' "ELECTION" TO INVOLUNTARILY BUY OUT LARKIN'S SHARES

A. The Shareholder Election Statute Is Inapplicable Because Larkin Has Not Asked the Court to Dissolve or Liquidate CBI.

The Election Statute in issue provides that:

> Whenever a petition for dissolution of a corporation is filed by one or more shareholders (subsequently in this section referred to as the "petitioner") pursuant to either § 7-1.2-1314 or a right to compel dissolution which is authorized under § 7-1.2-1701 or is otherwise valid, one or more of its other shareholders may avoid the dissolution by filing with the court prior to the commencement of the hearing, or, in the discretion of the court, at any time prior to a sale or other disposition of the assets of the corporation, an election to purchase the shares owned by the petitioner at a price equal to their fair value …

R.I. Gen. Laws Ann. § 7-1.2-1315.[1]

The United States Supreme Court has, in recent weeks, emphasized the importance of the longstanding and well-settled principles for statutory interpretation. First, and most basically, the Supreme Court has re-affirmed the cardinal principles that in interpreting a statute, a court must begin with the language of the statute itself, Republic of Sudan v. Harrison, 139 S. Ct. 1048 (2019), reading the words of a statute in their context and with a view to their place in the overall

---

[1] Section 7-1.2.1314 gives the Superior Court the power to liquidate a domestic corporation upon in an action by a shareholder or a creditor when certain circumstances are met, including shareholder deadlock, fraud, mismanagement, internal dissension and other circumstances. Section 7-1.2-1701 applies to closely held-corporations and allows the Court to enforce a provision in the articles of incorporation allowing a minority of shareholders to dissolve the corporation under RIGL § 7-1.2.1701(a)(2), *which would otherwise be invalid.* See RIGL § 7-1.2.1303(3) (requiring majority vote of shareholders to dissolve) and RIGL § 7-1.2.706 (permitting greater but not lesser vote of shareholders than otherwise required); see also text infra and Note 3.

statutory scheme, Home Depot U. S. A., Inc. v. Jackson, 139 S. Ct. 1743, 1748 (2019), and giving effect to every clause and word, if possible. Parker Drilling Mgmt. Servs., Ltd. v. Newton, No. 18-389, 2019 WL 2412907, at *5 (U.S. June 10, 2019). The Court has also instructed that the words of a statute must be given "the meaning that proper grammar and usage would assign them . . . unless they contradict legislative intent or purpose." Nielsen v. Preap, 139 S. Ct. 954, 965 (2019). These principles are not new. United States v. Giggey, 867 F.3d 236, 241 (1st Cir. 2017) (the text of a statute "furnishes the most reliable guide to its interpretation."). Applying these principles here, the Election Statute is inoperative because Larkin has not filed a petition to dissolve CBI and it does not even apply to CBWM.

      1.     Larkin Has Not Requested Dissolution of CBI or the Sale of CBI's Assets

Larkin enumerated the relief that he is seeking from the Court in the paragraphs enumerated in his prayer for relief (*a*) through (*l*) on page 25-26 of his Amended Counterclaim. Larkin has come to this Court, pursuant to Rule 13, in response to a Complaint filed by the Gardners, and requested an equitable remedy to restore him to his rightful position in his own companies after having been improperly frozen out. The relief that he requested, includes a series of injunctions aimed at protecting his rights as a shareholder, including an injunction to compel the Gardners to attend shareholder and membership meetings of CBI and CBWM after they initially refused to do so, and to compel them to give access to the companies' books and records, and other associated equitable relief. He also sought the appointment of a *nonliquidating* receiver pendente lite on the grounds that the parties cannot presently elect management due to actual or anticipated deadlock. As grounds for that preliminary equitable remedy, Larkin alleged, and stated under oath, that he had been frozen out and oppressed, that he had been denied his salary, that he had been denied access to corporate records, etc. In short,

Larkin alleged and showed all of the factors that the Rhode Island Supreme Court has identified as oppressive behavior, for which he has invoked the equitable powers of the Court for protection. See Hendrick v. Hendrick 755 A.2 784, 791-92 (R.I. 2000). Dissolving CBI is not among the relief that he has requested.[2] Thus, the essential trigger to a shareholder's election under the Statute ("Whenever a petition for dissolution of a corporation is filed by one or more shareholders …") is not present here.

The Gardners' attempt to exercise a statutory "right to elect" to buy Larkin out is not supported by any plain reading of the statute. While the Gardners repeatedly describe their statutory rights as "absolute" in an effort to spackle over the textual and logical deficiencies in their arguments with meaningless rhetoric, Larkin stands on the statutory text. Of course, Larkin's interpretation of the Statute is supported not only by the first clause of the Statute that states *what* may trigger an election (a "petition for dissolution") but also by the language that follows pertaining to *when* a shareholder's election may be made.

Dissolution of a domestic corporation is a two step process. First, there is a dissolution of the corporation either voluntarily under RIGL §§ 7-1.2-1301 to 1303, and §§ 1308-09; or administratively under RIGL § 7-1.2-1310; or by judicial decree under RIGL § 7-1.2-1314 and

---

[2] The Gardners point to some language in the "Parties" section of the Amended Counterclaim (¶5) in which Larkin alleges the reasons why John Sr. is a necessary and indispensable party to the case. That language is a carryover from an earlier draft of the Counterclaim that did include a Petition for Dissolution but which was excluded from the filed version because Larkin did not have sufficient information to decide whether to dissolve CBI, which he has every right to do unilaterally. See Amended Counterclaim, ¶ 70. Although some language referring to dissolution did carry forward in Paragraph 5, the fact remains that the Amended Counterclaim does not include a substantive count for dissolution or request dissolution in the prayer for relief AND the Amended Counterclaim very clearly states that there is an actual controversy regarding this exact issue. See Amended Counterclaim, ¶¶ 64-70. In particular, Paragraph 66 states "**Larkin has not filed a petition for dissolution of CBI, although it is his right to do so.** Larkin could also invoke his right under RIGL § 7-1.2-1314(a)(1)(vi) to dissolve CBI, which he has not exercised. Johnny, David and John Sr., collectively, have the same rights."

§§ 1320-21. Second, there is a wind up of the business and sale of the corporation's assets. See RIGL § 7-1.2-1303 (voluntary dissolution) and §§ 7-1.2-1316 to 1321 (involuntary dissolution). The second clause of the Election Statute that provides that an election may be made either at the time that a petition for dissolution is filed "or, in the discretion of the court, at any time prior to a sale or other disposition of the assets of the corporation." This language, in order for the statute to make sense, assumes that the relief that has been requested is to sell the assets of the corporation. Again, here, Larkin has not asked the Court for that relief. He has not asked the court to dissolve CBI or to sell its assets.

The Amended Counterclaim does not ask to dissolve or liquidate CBI. While the Amended Complaint does allege that a shareholder vote was anticipated to result in deadlock (which it did) and that other circumstances are present that would allow the Court to dissolve the corporation under § 1314(a), Larkin did not request dissolution. Larkin requested the appointment of a *nonliquidating* receiver pendente lite under the statutory authority of RIGL § 7-1.2-1323 (which is a statutory remedy under Rhode Island law), and not a *liquidating* receiver pendente lite under 7-1.2-1316(a).

2. The Gardners' Interpretation of the Statutory Language "Or Is Otherwise Valid" Is Wrong.

Without any sensible reading of the statute, the Gardners assert an "absolute right" to buy Larkins's shares involuntarily based on the statutory language in the second clause "or is otherwise valid." This reading of the statute make no sense grammatically or in context, and offends all of the cannons of statutory interpretation that the United States Supreme Court recently restated in the cases cited above.

The statutory language "or is otherwise valid" appears in the second clause in the statute that begins with "pursuant to." That clause describes two not three statutory predicates to a

5

shareholder's election under the Statute (which is evident from the statutory language "either … or".) See also infra Footnote 3. The first situation that a shareholder may make a buyout election is when a shareholder petitions for dissolution under RIGL § 7-1.2-1314, which is not present here for the reasons stated above. The second is when a shareholder of a closely-held corporation seeks to enforce a provision of the articles of incorporation pursuant to RIGL § 7-1.2-1701 that would otherwise be invalid. Thus, to understand the words in the Election Statute "pursuant to . . . a right to compel dissolution which is authorized under § 7-1.2-1701 or is otherwise valid," one must read look ahead to § 1701(a)(2) and understand its meaning. See Home Depot USA, Inc. v. Jackson, 139 S. Ct. 1743, 1748 (2019) (""It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.")

The general rule under the Business Corporations Act is that a domestic corporation can only be dissolved by a vote of a majority of the shareholders. RIGL § 7-1.2.1303(3) (requiring majority vote of shareholders to dissolve) and RIGL § 7-1.2.706 (permitting greater but not lesser vote of shareholders than otherwise required). Recognizing that closely-held companies often resemble partnerships and operate that way, section 1701(a) of the Business Corporations Act permits a court to enforce certain types of provisions in the context of a closely-held corporation that would otherwise be invalid and unenforceable. Specifically, section 1701(a)(2) provides with respect to a closely-held corporation that a court may enforce a provision that allows less than a majority of shareholders to dissolve a corporation. Thus, the clause "pursuant to …. a right to compel dissolution which is authorized under § 7-1.2-1701 or is otherwise valid," means that a buyout election may be made whenever a petition for dissolution is filed pursuant to § 1314 or pursuant to an otherwise invalid minority dissolution provision that *is*

*made valid and enforceable* by reason of § 1701(a)(2), <u>or</u> pursuant to a valid provision in the articles of incorporation (in the case of a majority or supermajority provision). (In other words, the first sentence could be read to say, "[w]henever a petition for dissolution of a corporation is filed . . . pursuant to … a right to compel dissolution which . . . is otherwise valid.")

The Gardners' flimsy interpretation of the statutory language "is otherwise valid" is plainly wrong.[3] Their expansive and far-reaching interpretation of these words so that they can buy Larkins' shares would mean that even if a shareholder such as Larkin files any kind of petition in a court of equity seeking any kind of relief for any reason—including, as here, a counterclaim by an equal owner seeking to be treated equally in a corporation that he owns the greatest single stake—then the other shareholders can elect to buy his shares. The Gardners essentially claim this right because the word "otherwise" appears somewhere in the statute without regard to the other words surrounding it on both sides. <u>See supra</u> Footnote 3.

This is not hard. If the Rhode Island legislature has intended to provide a general catch-all to allow a shareholder election in any circumstance that a lawsuit between shareholders is ever filed, it would have said so in words that are more clearly stated than the words as they appear in in the second clause of § 1315, "or is otherwise valid." Instead, the Legislature stated

---

[3] The Gardners interpretation of the Statute requires the Court to ignore the language "either … or" and to read the Statute as permitting a shareholders election in any of <u>three (not two)</u> circumstances: (1) "[w]henever a petition for dissolution . . . is filed . . . pursuant to . . . § 7-1.2-1314" and (2) "[w]henever a petition for dissolution . . . is filed . . . pursuant to . . . a right to compel dissolution which is authorized under § 7-1.2-1701, and, illogically, (3) "[w]henever a petition for dissolution . . . is filed . . . pursuant to . . . or *is otherwise valid."* Not only does not this interpretation not make any grammatical sense. It does not make any logical sense either because the words "otherwise valid" are clearly adjectives in the sentences that describe the words an "[otherwise valid] right to compel dissolution [of a closely held corporation]" and not an independent noun that follows the words "pursuant to." <u>See</u> <u>Nielsen v. Preap</u>, 139 S. Ct. 954, 965 (2019) ("[w]ords are to be given the meaning that proper grammar and usage would assign them . . . unless they contradict legislative intent or purpose"); <u>Lopez-Soto v. Hawayek</u>, 175 F.3d 170, 174 (1st Cir. 1999).

7

with specificity the circumstances under which an election may be made ("whenever a petition for dissolution of a corporation is filed . . . pursuant to either § 7-1.2-1314 or a right to compel dissolution . . ." ). Federal courts do not revise legislation as written to create new remedies for circumstances that a statute does not address. Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 794 (2014). Moreover, unless commanded by the text, statutes should not be construed to operate "to the farthest reach of their linguistic possibilities if that result would contravene the statutory design." Maracich v. Spears, 570 U.S. 48, 60 (2013). If the Gardners thought they could force Larkin out of his own company and then buy his shares without answering to Court for their conduct, then they thought wrong.

      B.    The Rhode Island Limited Liability Company Act Does Not Have an Election Statute.

The Shareholder Election Statute is applicable only to domestic corporations. There is no similar provision in the Limited Liability Company Act. The Gardners do not point the Court to a provision in the Limited Liability Company Act because no such remedy exists. Instead, the Gardners are asking this Court to simply make up a new remedy because it suddenly suits their purposes.

It is well settled that "if a statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Ziglar v. Abbasi, 137 S. Ct. 1843, 1856 (2017) (internal quotations omitted); California v. Sierra Club, 451 U.S. 287, 297 (1981) ("The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide."). These principles apply to State law as well. Doe Next Friend Doe v. City of Pawtucket, 374 F. Supp. 3d 188, 2019 WL 1615396 at *8 (D.R.I. 2019) (McConnell, J.). If a State law does not create a remedy, the federal courts will not

8

judicially create one for the Gardners simply because they now regret letting Larkin into their company and they suddenly want to take back his membership interest <u>with no legal right to do so</u>.

> II. A PARTY SHOULD NOT BE FORCED TO LOSE HIS COMPANY BECAUSE HE PEACEFULLY PETITIONED A COURT OF EQUITY FOR RELIEF FROM OPPRESSIVE CONDUCT

Larkin is peacefully petitioning this Court for an equitable remedy after having been frozen out of his own company. He alleges that the Gardner parties have engaged in wrongful conduct and he is seeking to be restored to his previous position in the company through the appointment of a receiver and/or a series of injunctions and such other equitable relief as may be necessary to restore him to the position to which he is rightfully entitled. As stated, Larkin did not come to this court asking to dissolve either entity, although it would be his right to do so under RIGL § 7-1.2.-1314(a)(1)(vi). The Court has already stated that Larkin has demonstrated *prima facie* evidence of oppression. See Transcript of Proceedings before Hon. Patricia Sullivan at 17-18 (May 29, 2019).

Oppressive conduct by one shareholder against another in a closely held corporation is generally considered to be "wrongful." It might go by many legal terms such as "inequitable," "freeze out," or "squeeze out." It could also be called "unclean hands." However, no matter what terminology one uses to describe the conduct of freezing out an equal or minority partner, it is not conduct to which the law generally gives protection. Rather, such conduct is one for which the courts provide a remedy to the victim, and not some adverse consequence or punishment.

It is a principle older than the Republic itself that "no man shall take advantage of his own wrong." <u>The Brutus</u>, 4 F. Cas. 490, 498 (C.C.D. Mass. 1815) (Story, J.); <u>see also</u> <u>Talbot v. Jansen</u>, 3 U.S. 133, 158 (1795) ("no man shall set up his own fraud or iniquity, as a ground of

action or defence."); Deitrick v. Greaney, 309 U.S. 190, 196 (1940) ("It is a principle of the widest application that equity will not permit one to rely on his own wrongful act, as against those affected by it but who have not participated in it, to support his own asserted legal title or to defeat a remedy which except for his misconduct would not be available."); Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232 (1959) ("To decide the case we need look no further than the maxim that no man may take advantage of his own wrong."). Rhode Island law adheres to this ancient principle. Greene v. Equitable Fire & Marine Ins. Co., 11 R.I. 434, 437 (1877) ("a party shall not take advantage of its own wrong"); Silva v. Merritt Chapman & Scott Corp., 52 R.I. 30, 156 A. 512, 514 (1931). It is antithetical to anything that the Rhode Island Supreme Court has ever said regarding shareholder oppression to suggest that a party can use principles of shareholder oppression *offensively* to be able to buy out an equal shareholder's interest in a company (for present market value) by deliberately engaging in inequitable conduct. If anything, the Rhode Island Supreme Court has repeatedly discussed oppressive conduct with disapproval, not as a self executing means of exercising an "option to purchase" the shares of equal partners with whom a person no longer wants to be in business.

This Court, in interpreting Section 1315, must look to the Statute as a whole to divine its meaning. The Gardners' entire argument is predicated on the words, "or is otherwise valid." That itself should be a signal that the Gardners do not have any textual basis for their argument. However, completing the exercise, while the statute most likely is intended to touch on many situations, the most obvious situation would be one in which one shareholder wants to sell and dissolve a company and the other shareholder wants to retain it. In this situation, if the party desiring dissolution files a petition to dissolve the company, then the plain intent of the statute is

to allow the party desiring to get out to be bought out at the election of the party wanting to stay in. That would be the most obvious example of how the Statute is intended to operate.

Another example might be a situation where a minority shareholder is complaining about mismanagement and the minority shareholder alleges fraud and abuse to the point that *the minority shareholder asks for dissolution*. Again, in this situation, the Statute has a "Solomon-like" quality that if a dissenting shareholder would prefer dissolution over staying in the company, then the majority can elect to buyout the dissenting minority. However, neither of these situations is present here.

This situation involves two equal shareholder factions and Mr. Larkin is suing, not to dissolve the companies, but to be treated equally and fairly. That is traditionally the province of a court of equity – to enforce fairness and not to reward oppression. In these companies, for example, the parties distributed corporate earnings in the form of salaries rather than strictly as dividends. There is a body of law that covers this common situation. However, generally speaking, one shareholder group cannot deny another shareholder group of its investment backed expectations by waking up one day and terminating the other party's salary because they prefer to keep the corporate earnings all for themselves rather than share them. See Grady v. Grady, P.B. 2012-367, 2012 WL 171006 (R.I. Super. Jan 17, 2012) (Silverstein, J.).

The Gardners' argument is novel, if not completely reprehensible. The Gardners posit that they have some legal entitlement to engage in oppressive behavior and that if the oppressed party, i.e. Larkin, complains or has the gall to ask a court to intervene, then he must forfeit his position in the company to them and they can buy him out at any time. In fact, the Gardners argue that they can do anything they want to Jim Larkin and if he doesn't like it they can buy his shares at a price to be determined irrespective of the business reality that people often make long

term investments with the goal that its value will grow over time. The book value of the business in June 2019 may not compare to the value of the business opportunity, which is what the Gardners are seeking to take away from Larkin involuntarily.

Worse, taken to its logical extension, the Gardners are claiming a party has a right to engage in fraudulent conduct with no consequence. Consider the language of RIGL § 7-1.2-1314(a)(1)(v), which permits a Court to dissolve a company if the acts of the controlling parties are "illegal, oppressive, or fraudulent." Under the Gardner's view, they could be actively embezzling from the companies, engaging in tax evasion, and siphoning all profits to themselves, and they would have the "absolute right" to buy his shares if Larkin were to challenge them or to ask a court of equity to stop it. Not coincidentally, the word "oppressive" is in the same sequence as "illegal" and "fraudulent" so that the Gardner's arguments cannot pass muster for "oppressive acts" if they would also not pass muster for "illegal" and "fraudulent" acts.

In a case initially identified by the Court, Burleson v. Havutin. 273 P.2d 124, 127 (Colo. 1954), the Colorado Supreme Court expressed disapproval of an attempt by bad actors to take the another party's shares through oppressive conduct. The Court ordered the appointment of a receiver and said:

> Where Burleson, owning one-half of the outstanding stock of the corporation, has been denied a voice in the management, or the affairs, of the corporation, it is no relief to him for the trial court to say that he should sell his stock and abide by the results. . . . Burleson is the victim of a wrong perpetrated upon him, and is then advised by the court that there is no remedy.
>
> The trial court erred . . . the cause is remanded with directions to appoint a receiver; and then proceed toward an accounting of the affairs of the corporation during the period in which, through the operations of the holders of the other fifty per cent of the stock, Burleson found himself to be in the position of an outsider, through no fault of his own.

Id. at 128. The Burleson court prevented the oppressors from obtaining any advantage from their own wrong. Cf. Brodie v. Jordan, 447 Mass. 866, 870, 857 N.E.2d 1076, 1080 (2006) (reversing forced buy-out of oppressed minority shareholder). Here, Larkin has pleaded that that the Gardners should be estopped or enjoined from exercising any election under section 1315 and that if anyone should have that right, the Gardners should be deemed to be the petitioning parties and he should have the right to buy their shares.

> III. THE EFFECT OF THE GARDNERS' OPPRESSIVE CONDUCT AND UNCLEAN HANDS UPON THE OPERATION OF THE SHAREHOLDER ELECTION STATUTE IS THE SUBJECT OF COUNT VII OF THE AMENDED COUNTERCLAIM AND SHOULD BE DECIDED IN CONJUNCTION WITH A FINAL DECISION ON THE MERITS.

The essential difference between Larkin's original counterclaim and the first amended counterclaim is the addition of Count VI, which seeks a declaratory judgment as to the operation of the statute. It should now be clear that there is an "actual controversy" (within the meaning of the Declaratory Judgments Act) as to the parties' respective rights under § 1315. The Gardners contend that they have an "absolute right" to buy Larkin's ownership interests in both companies because he is peacefully petitioning this court for equitable relief from their oppressive conduct. Larkin contends that the oppressors should obtain no advantage from their inequitable conduct and that the Gardners should be estopped or enjoined from making a § 13515 election, or that they should be deemed to be the dissolving parties in these circumstances so that Larkin has the right of election. This is a legal issue that should be decided later in the case following the development of a full factual record and a final judgment on the merits.

Suffice to say, unlike the Gardners, Larkin did not breach the peace. He could have engaged a locksmith and locked the Gardners out so that he controls the company rather than them. Rather than engage in self-help, Larkin came to the court and peacefully petitioned the

13

court for relief. That is the way that parties are supposed to act and not engage in inequitable conduct.

There should be no reward for the Gardners here. They once owned a manufacturing company and a retail window company but they sold it to Larkin. They cannot simply force him to sell them his shares because they suddenly regret their decision to make him an equal owner of each company. If they want to buy Larkin's ownership interests, they need to negotiate terms that are agreeable to Larkin. However, they cannot use § 1315 as a means of electing to buy his shares whenever they decide they want to.

## **CONCLUSION**

For the reasons set forth herein, the Court should disregard or strike the Notices of Election to Purchase Shares [ECF ## 54-55], subject to a final determination on the merits of Count VI of the Amended Counterclaim.

JAMES R. LARKIN

By his attorneys,

/s/ Charles D. Blackman
Charles D. Blackman (#5522)
Levy & Blackman LLP
469 Angell Street, Suite 2
Providence, RI  02906
401-437-6900
cblackman@levyblackman.com


/s/ Miriam A. Ross
Miriam A. Ross (#3790)
Law Offices of Miriam Ross
10 Elmgrove Avenue
Providence, RI  02906
401-270-9449
maross@mrosslegal.com

**CERTIFICATE OF SERVICE**

   I hereby certify that I filed this document electronically on June 18, 2019 and that it is available for viewing and downloading from the ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties and counsel of record may access this filing through the Court's CM/ECF System.

                *s/* Charles D. Blackman
                Charles D. Blackman