UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN GARDNER, IV, and | : | |
| DAVID GARDNER, | : | |
|     Plaintiffs/Counter Defendants, | : | |
| | : | |
| v. | : | C.A. No. 19-139JJM |
| | : | |
| JAMES R. LARKIN, individually and as | : | |
| the Managing Member of BluShield | : | |
| Window Systems, LLC, and BLUSHIELD | : | |
| WINDOW SYSTEMS, LLC, | : | |
|     Defendants/Third-Party Plaintiffs/ | : | |
|     Counter Claimants, | : | |
| | : | |
| v. | : | |
| | : | |
| CUSTOM BUILT WINDOWS | : | |
| MANUFACTURING, LLC, CUSTOM | : | |
| BUILT, INC., and JOHN E. | : | |
| GARDNER, III, | : | |
|     Third-Party Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Pending before the Court is a motion to dismiss (ECF No. 58) James Larkin's Verified Amended Counterclaim and Third-Party Complaint (ECF No. 41) (the "Larkin Pleading").[1] The motion is brought by Counterclaim Defendants John Gardner IV ("Johnny") and David Gardner, as well as by Third-Party Defendant John Gardner III ("John Sr.").[2] The Gardners seek dismissal of every Count still pending[3] in the Larkin Pleading; these are as follows: Count II –

---

[1] Blushield Window Systems LLC, also a named defendant, had previously joined the Larkin Pleading. However, it filed a notice voluntarily dismissing all of its claims, which the Court entered. ECF No. 84; Text Order of July 9, 2019.

[2] The Gardners will sometimes be referred to by first name; all three will collectively be described as the "Gardners."

[3] Larkin submitted a notice of voluntary dismissal as to Count I (Failure to Hold Annual or Special Meeting to Elect Officers), which the Court entered. ECF No. 83; Text Order of July 9, 2019.

Temporary Receivership / Corporate Deadlock; Count III – Breach of Fiduciary Duty / Corporate Freeze Out; Count IV – Inspection of Books and Records; Count V – Breach of Contract, Reinstatement and Unjust Enrichment; Count VI – Contract Formation (Declaratory Judgment); and Count VII – Shareholder's Election to Purchase (Declaratory Judgment / Injunction).  Larkin pursues each of these Counts by counterclaim against David and Johnny and by third-party complaint against John Sr.

The Gardners argue that Counts II, III and IV must be dismissed as moot pursuant to Fed. R. Civ. P. 12(b)(1).  They contend that their filing on June 11, 2019, of "elections" pursuant to R.I. Gen. Laws § 7-1.2-1315 to force a buy-out of Larkin's ownership interests in Custom Built, Inc. ("CBI"), and Custom Built Window Manufacturing, LLC ("CBWM"), terminated Larkin's status as an owner of CBI and CBWM and eliminated any basis for the forward-looking relief sought in those causes of action.  Turning to Counts V, VI and VII, the Gardners challenge the plausibility of Larkin's allegations pursuant to Fed. R. Civ. P. 12(b)(6), including that Counts VI and VII fail to allege plausible claims for declaratory relief.  The Gardners also assert that Larkin's counterclaims all fail to comply with Fed. R. Civ. P. 13(a) because they do not arise from the same transaction or occurrence as Plaintiffs' claims, and that Larkin's third-party complaint against John Sr. violates Fed. R. Civ. P. 14(a) since it lacks a theory of secondary liability.

Larkin counters that the Gardners' § 1315 buy-out elections do not moot any of his counterclaims because the validity, *vel non*, of the Gardners' buy-out elections is a live controversy animating Count VII (which asks the Court to declare the parties' rights under § 1315), as well as giving rise to the need for a temporary receiver *pendente lite* for the duration of the persisting deadlock in CBI and CBWM as sought by Count II, to his entitlement to

reinstatement and his salary as sought by Count III, and to his ongoing need for access to the books and records of CBI and CBWM as sought by Count IV. In any event, Counts III and IV are not moot because they also seek money damages based on the Gardners' conduct prior to the filing of the election. As to Count V, Larkin asserts that the pleading contains sufficient factual detail to render plausible his claim to employment and a salary, which the Gardners breached, while Counts VI and VII plausibly present valid subjects for declaratory relief because they are grounded in live controversies relating to the Gardner/Larkin business agreements and the Gardners' § 1315 buy-out rights. Finally, Larkin argues that the Gardners misread the Rules governing joinder, and that joinder of all three Gardners as defendants on the claims asserted against them is procedurally proper under Fed. R. Civ. P. 13(b) and (h), 14, 19 and 20.

The Gardners' motion to dismiss has been referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that the motion be denied.

## I. BACKGROUND[4]

Larkin met the Gardners in February 2017. Larkin Pleading ¶ 13. Before then, Larkin had developed a background in sales of window systems and established Blushield Window Systems LLC ("Blushield"), while the Gardners (together with other Gardner family members) had been running their struggling family-owned window business, Custom Built Window and Doors Systems, Inc., the predecessor of CBI and CBWM. Id. ¶¶ 3-4, 10, 12. Larkin and the Gardners met multiple times during the spring of 2017 and ultimately formed a business relationship. Id. ¶¶ 13-14. Larkin applied his sales skills to CBI, and based on the positive

---

[4] With respect to the Fed. R. Civ. P. 12(b)(6) component of the Gardners' motion, only the facts gleaned from the Larkin Pleading are considered, and all of them are accepted as true. As indicated in the text, other facts (principally drawn from the Gardners' complaint) are included for context or because they are considered in evaluating the Gardners' mootness arguments. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (court may "consider extrinsic evidence" in mootness inquiry).

results, the Gardners transferred him 33.5% of the outstanding common stock of CBI in May 2017.  Id.

In the course of the Gardner/Larkin negotiations, on August 11, 2017, Larkin, Johnny Gardner and David Gardner (but not John Sr.) signed a document titled "Ownership Agreement," which Larkin drafted.  Id. ¶ 17; ECF No. 41-2 ("Ex. 2").  According to this document, Larkin would receive a 50% ownership interest in CBI and CBWM.  Ex. 2.  In exchange, the "Ownership Agreement" provides that Larkin would transfer ownership of Blushield to CBWM.  ECF No. 6 ¶ 15.  Larkin alleges that the "Ownership Agreement" was a mere outline of an agreement that the parties intended to later formalize and that, after August 11, 2017, their negotiations continued and the concept underlying their relationship profoundly changed.  Larkin Pleading ¶¶ 17-19.  Then, on October 31, 2017, Larkin and the Gardners executed the formal agreements; pursuant to these final documents, which superseded the concept embodied in the "Ownership Agreement," Larkin became a 50% owner of CBI and CBWM and Blushield was not mentioned at all.  Id. ¶¶ 20-21.  With no contractual commitment to do so, Larkin did not transfer Blushield to CBWM.  Id. ¶ 22; see ECF Nos. 41-3 ("Ex. 3"), 41-4 ("Ex. 4").

After October 31, 2017, Larkin provided valuable services to the two entities.  Larkin Pleading ¶ 59.  However, the Gardners embarked on an incremental course of oppressive conduct, freezing-out Larkin as an owner, cutting off his salary and then his employment; this course of oppressive, illegal and fraudulent conduct culminated in the delivery of a letter written by Johnny Gardner that informed Larkin that he was locked him out of the premises and was cut off completely from access to the books and records.  Id. ¶¶ 23-30.  The Gardners also refused to convene meetings of CBI and CBWM as required by their respective documents.  Id. ¶ 31.  With the Gardner/Larkin relationship in tatters and CBI and CBWM deadlocked, the Gardners

initiated this case in March 2019 seeking to compel the transfer to CBWM of what they contend is its valid ownership interest in Blushield based on the "Ownership Agreement." Id. ¶¶ 23-25; see ECF No. 6.

In Count II of the Larkin Pleading, Larkin states that the division between him (a 50% owner of CBI and CBWM) and the Gardners (collectively the other 50%) has resulted in deadlock in the management of the entities because neither can properly elect management in accordance with their respective organizational documents; as a remedy, Larkin asks the Court to appoint a temporary receiver *pendente lite*, a remedy contemplated by R.I. Gen. Laws § 7-1.2-1323 (if grounds for liquidation, such as deadlock, are established, but it is also established that liquidation would not be appropriate, court may appoint receiver). See Larkin Pleading ¶¶ 42-43. Count III avers that the Gardners breached their fiduciary duty to Larkin in contravention of his rights and reasonable expectations as an owner, deprived him of employment and his corporate office, took unauthorized action without the required approval, wasted corporate assets, withheld financial information, prevented Larkin from participating in the companies and barred him from the premises of CBI and CBWM. Id. ¶ 47. Count IV is based on the Gardners' refusal to allow Larkin to access CBI and CBWM's books and records, including that this action has impaired Larkin's ability to exercise his rights under R.I. Gen. Laws § 7-1.2-1315 (the buy-out statute). Larkin Pleading ¶¶ 53-54, 70.

In Count V, Larkin asserts that the Gardners failed to pay him sufficiently, and ultimately discontinued his salary and health benefits completely, even as he had been and continued to provide valuable services, all in contravention of Larkin's view of the parties' understandings in executing the final documents on October 31, 2017. Id. ¶¶ 56-58. Count VI seeks a judicial declaration finding that the "Ownership Agreement" signed on August 11, 2017, does not

5

constitute an enforceable agreement implicating Larkin's ownership of Blushield. Id. ¶ 63. And Count VII requests that this Court declare the meaning of R.I. Gen. Laws § 7-1.2-1315 (the buy-out statute) as applied in the context of this case, including that the Larkin Pleading does not constitute a "petition for dissolution of a corporation" so that the buy-out election right has not been triggered, that the Gardners should be estopped from exercising the right of buy-out by their inequitable conduct, and that, if and when a petition for dissolution is ever filed, Larkin has the same right to elect to buy-out as the Gardners have. Id. ¶¶ 65-69.

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(1) Mootness Challenge to Counts II, II and IV

The Gardners' first line of attack is based on mootness. They argue for dismissal based on the lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because there is no case or controversy presented by Counts II, III or IV as a result of the Gardners' June 11, 2019, filing of elections pursuant to R.I. Gen. Laws § 7-1.2-1315 to buy-out Larkin's ownership interests in CBI and CBWM after Larkin filed the Larkin Pleading. The Gardners contend that the election erases any forward-looking live issue regarding corporate deadlock (Count II), corporate freeze out (Count III) or inspection of books and records (Count IV). In so doing, they rely on the provision of § 1315, which states: "The petitioner is entitled to interest . . . on the purchase price of the shares from the date of the filing of the election to purchase the shares, and all other rights of the petitioner as owner of the shares terminate on that date." Id. (emphasis supplied).

The constitutional requirement of a case or controversy "was designed to ensure that federal courts decide only disputes of 'a Judiciary nature,' thereby prohibiting advisory opinions[.]" Gilday v. Dubois, 124 F.3d 277, 295 (1st Cir. 1997) (quoting M. Farrand, 2 *Records*

*of the Federal Convention of 1787*, at 430 (1911)); Operation Clean Gov't v. R.I. Ethics Comm'n, 315 F. Supp. 2d 187, 193 (D.R.I. 2004) ("federal courts do not issue advisory opinions"). "It follows that federal courts lack constitutional authority to decide moot questions; the fact that a live controversy existed when the plaintiff brought suit is not enough." Redfern v. Napolitano, 727 F.3d 77, 83 (1st Cir. 2013) (internal quotation marks omitted); Operation Clean Gov't, 315 F. Supp. 2d at 193 ("If the case and controversy requirement is not satisfied, the matter is moot, and must be dismissed."). A case is moot "when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001). Arguments "grounded in . . . mootness . . . engage the gears of [Fed. R. Civ. P.] 12(b)(1)." Valentin, 254 F.3d at 363. Nevertheless, "[t]he burden of demonstrating mootness is a heavy one." Cty. of L.A. v. Davis, 440 U.S. 625, 631 (1979).

The Gardners' mootness argument suffers from two fatal flaws.

First, the Gardners' argument overlooks Count VII of the Larkin Pleading, which crisply and clearly raises a material and hotly contested "case or controversy" regarding the proper interpretation of R.I. Gen. Laws § 7-1.2-1315 in the circumstances of this case. Larkin Pleading ¶¶ 7, 64-70. Notably, the Gardners have not brought a Fed. R. Civ. P. 12(b)(1) challenge to Count VII, nor could they – Count VII clearly states a plausible claim for a judicial declaration of the meaning of this state statute as applied here.[5] Based on Count VII, the challenged Counts are similarly viable because they implicate rights that will continue to exist unless and until the legal and factual controversy posed by Count VII is resolved by the Court and a legally viable § 1315 election terminates Larkin's rights as an owner of either CBI or CBWM or both. Until

---
[5] See n.7 *infra*.

7

then, the challenged Counts of the Larkin Pleading present a live case or controversy in that they assert that CBI and CBWM are deadlocked and ask for the remedy of a temporary receiver *pendente lite* (Count II); that Larkin's rights not to be frozen out are protected as long as he continues to be an owner (Count III); and that Larkin's right to access to the books and records is protected, allowing him to carry out his responsibilities as an owner, including to assess the implication of a § 1315 buy-out for himself and his co-owners (Count IV). Count VII of the Larkin Pleading unambiguously places in issue the impact of § 1315, including whether the Gardners are right that they can wipe out an equal owner simply by filing an election. Accordingly, Counts II, III and IV, which are derivative of Count VII, unambiguously state claims that are grounded in a very real live and ongoing controversy.

A second problem with the mootness argument is applicable to two of the three challenged Counts. Counts III and IV not only look forward, seeking to protect Larkin's ongoing rights as a 50% owner of CBI and CBWM unless and until terminated, but also look back and ask for money damages. Therefore, even if the Gardners' interpretation of R.I. Gen. Laws § 7-1.2-1315 is accepted and the Court finds that the election terminated Larkin's ownership rights as of the date it was filed, these Counts are not moot.

Apart from mootness based on R.I. Gen. Laws § 7-1.2-1315, the Gardners have a second reason for their contention that Count IV is moot – they contend that, on May 24, 2019, pursuant to the Court's mandate (which is set out in the Order appointing the Special Master, ECF No. 26), they did afford Larkin with access to copies of the books and records. This variation on the mootness theme is also unpersuasive. To dismiss Count IV for this reason, "it must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Barlow v. SPS Select Portfolio Servicing, Inc., 343 F. Supp. 3d 5, 7 (D. Mass. 2018)

(quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)). When compliance with statutory obligations does not occur until there is compulsion from the Court, it is simply not "absolutely clear that the allegedly wrongful behavior" – cutting Larkin off from access to the books and records – "could not reasonably be expected to recur." Id. In any event, as to CBI, R.I. Gen. Laws § 7-1.2-1502 imposes personal liability on "[a]ny officer or agent who . . . refuses to allow any shareholder . . . to examine and make extracts from [the corporation's] books and records of account." The officer "is liable to the shareholder . . . in a penalty of ten percent (10%) of the value of the shares owned by the shareholder." Id.; see Long v. Atl. PBS, Inc., 681 A.2d 249, 251 (R.I. 1996) (jury award of damages based on statutory penalty imposed on individual who wrongly denied owner of access to books and records). The personal liability of one or more of the Gardners for refusing Larkin access to the books and records is another live issue embedded in Count IV.

Based on the foregoing, I find that Larkin has "a legally cognizable interest" in the resolution of Counts II, III and IV and that the Gardners have presented no reasons to find those claims moot. See Cruz, 252 F.3d at 533. Mindful that "[t]he burden of demonstrating mootness is a heavy one," Cty. of L.A., 440 U.S. at 631, I recommend that this aspect of the Gardners' motion to dismiss be denied.

> B.   Fed. R. Civ. P 12(b)(6) Challenge to Counts V, VI and VII

The Gardners seek to dismiss Counts V, VI and VII for failing to state a claim upon which the Court can grant relief pursuant to Fed. R. Civ. P. 12(b)(6).

To avoid foundering in the face of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a pleading must allege a plausible entitlement to relief that gives the opposing parties fair notice of the claim and the grounds on which it rests. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).  This two-pronged approach begins by identifying and disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as . . . fact[ ]'" or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 1949-50 (quoting Twombly, 550 U.S. at 555).  The Court must determine whether the well-pled facts, taken as true, are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  Because this is a diversity case, with some of the claims grounded in the Court's supplemental jurisdiction, Rhode Island law provides the substantive rules of decision.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Houben v. Telular Corp., 309 F.3d 1028, 1032 (7th Cir. 2002) ("the Supreme Court has made clear that the [Erie] doctrine applies . . . to state law claims . . . that are brought to the federal courts through supplemental jurisdiction").

The Gardners argue that Count V fails because it is based only on an "understanding" and therefore lacks facts sufficient to establish one of the key elements of a breach of contract claim.  But the Gardners misconstrue Count V.  Titled, "Breach of Contract, Reinstatement, and Unjust Enrichment," Count V is based on an alleged understanding of the owners that profits in CBI and CBWM would be distributed through salaries and that, as an owner, Larkin had a reasonable expectation of continuing employment with CBI and CBWM, which would not be terminated except for a legitimate business reason and only if the termination of such employment is the least harmful alternative to achieve the business goal.  Larkin Pleading ¶¶ 14, 45, 56-60.  This claim is grounded in a Rhode Island state court decision penned by a well-respected jurist,

Superior Court Justice Michael Silverstein, Grady v. Grady, No. PB 09-0367, 2012 WL 171006 (R.I. Super. Jan. 17, 2012), which recognizes this alteration of the usual principle of at-will employment in the context of a close corporation. Grady is derived from the fiduciary duty owed by owners of a close corporation to each other. Id. at *3-4; see also Marsh v. Billington Farms, LLC, No. 04-3123, 2006 WL 2555911, at *4 (R.I. Super. Aug. 31, 2006) (owners of limited liability company owe each other fiduciary duty). Count V also alleges that Larkin's salary in CBWM was cut off in November 2018 and his salary in CBI was cut off in March 2019, yet he continued to perform "valuable services," conferring unjust enrichment on the entities and their other owners. Larkin Pleading ¶¶ 57-59. This foundation is more than sufficient for Fed. R. Civ. P. 12(b)(6) plausibility.

The Gardners also challenge Counts VI and VII under Fed. R. Civ. P. 12(b)(6), arguing that these Counts do not state claims for declaratory relief[6] that can withstand Twombly/Iqbal scrutiny. Yet, the Gardners' specific challenge to the viability of Counts VI and VII[7] appears to

---

[6] The Gardners cite to Rhode Island law on declaratory judgments. ECF No. 58-1 at 15. While the Larkin Pleading does not specify whether Counts VI and VII rely on federal or state law, Larkin has clarified that he is basing them on the federal Declaratory Judgment Act, although he also notes that this is a difference without distinction because the state and federal versions are materially similar. Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "To determine if the declaratory relief is sought within a case of actual controversy, district courts must examine 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d 638, 645 (1st Cir. 2019) (emphasis in original) (quoting Md. Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

[7] While the Gardners do not contend that Count VII is moot because of the lack of live case or controversy, because they did make that argument as to Counts II, III and IV, which are related to Count VII, it is worth lingering to note that existence of a "case or controversy" is amply revealed by a juxtaposition of the parties' pleadings and arguments, which reveal that the parties fundamentally disagree about how R.I. Gen. Laws § 7-1.2-1315 applies in the circumstances of this case. For example, the Gardners contend that § 1315 means that they hold statutory rights immediately to purchase Larkin's ownership interests in CBI and CBWM, while Count VII asserts that "Johnny, David and John Sr. have no right to make election under § 1315." Larkin Pleading ¶ 69. Count VII clearly "show[s] that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d at 645 (emphasis in original).

11

be based solely on the puzzling proposition that these claims are "not . . . appropriate claim[s]" because "the primary litigation arises from" the "Ownership Agreement." ECF No. 58-1 at 15. Since they cite nothing to support this proposition, the Court is left to speculate what they mean. In the face of Fed. R. Civ. P. 18(a), which expressly permits a party like Larkin who is "asserting a . . . counterclaim . . . or third-party claim" to "join, as independent or alternative claims, as many claims as it has against an opposing party," this argument is rejected.

On the substance, each of Larkin's declaratory judgment Counts asks the Court to declare his rights with respect to an intensely disputed issue – whether the "Ownership Agreement" is a binding contract (Count VI) and what is the legal effect of R.I. Gen. Laws § 7-1.2-1315 in the circumstances of this case (Count VII). Each is intended to draw the Court into resolving hotly contested factual and legal questions, which is precisely what the Declaratory Judgment Act was created to permit. See, e.g., Oneida Tribe of Indians of Wis. v. Wisconsin, 951 F.2d 757, 760 (7th Cir. 1991) (Declaratory Judgment Act appropriate to obtain judicial interpretation of statute); Smith v. Washington Post Co., 962 F. Supp. 2d 79, 89 (D.D.C. 2013) (declaratory judgment action appropriately seeking guidance regarding existence of binding implied contract); Black & Veatch Corp. v. Modesto Irrigation Dist., 827 F. Supp. 2d 1130, 1148 (E.D. Cal. 2011) ("It is elementary that questions relating to the formation of a contract, its validity, its construction and effect, excuses for nonperformance, and termination are proper subjects for declaratory relief."). Declaratory relief exists to enable a party to a contract to determine his or her rights and liabilities before incurring costs and risks the party would not incur if the party's view of his or her rights and liabilities under the contract is erroneous. Rubin v. Toberman, 38 Cal. Rptr. 32, 37 (Cal. Dist. Ct. App. 1964). And the Larkin Pleading is replete with facts that are more than sufficient to give these claims plausible content. Nor is Count VI barred by any

12

blanket prohibition on bringing as a counterclaim what could have been asserted as an affirmative defense. Little Kids, Inc. v. 18th Ave. Toys, Ltd., C.A. No. 18-533WES, 2019 WL 2514764, at *3-4 (D.R.I. June 18, 2019) (law permits declaratory action asserted as counterclaim, even though it could have been or is also asserted as an affirmative defense).

The Gardners have not presented the Court with any reason to question what appears from a review of the Larkin Pleading – that both of these Counts state plausible claims that are concretely grounded in facts and fall squarely within the purview of the Declaratory Judgment Act. The Gardners' Fed. R. Civ. P. 12(b)(6)-based challenge to Counts VI and VII is unavailing.

### C. Challenge to Joinder of Parties (Fed. R. Civ. P. 13, 14, 19 and 20)

Taking a different tack, the Gardners alternatively contend that the Larkin Pleading runs afoul of the Rules on joinder of parties.

As to the counterclaim against Johnny and David Gardner, this argument appears to be based on the premise that the Larkin Pleading is not compulsory pursuant to Fed. R. Civ. P. 13(a) and therefore should be dismissed. It fails because Fed. R. Civ. P. 13 also has subpart (b), which permits a pleader to assert permissive counterclaims.[8] While the Gardners may be right that one or more of the claims in the Larkin Pleading might fall into the latter – permissive – category, as long as each claim is either compulsory or permissive, there is no reason to dismiss them.[9] C. Wright & A. Miller, 6 Federal Practice and Procedure § 1420 (3d ed.) ("Rule 13(a) and Rule

---

[8] A compulsory counterclaim must be stated if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A-B). And a permissive counterclaim is any other claim against an opposing party that is not compulsory. Fed. R. Civ. P. 13(b).

[9] To be clear, the Court is not ruling, one way or the other, as to whether some or all the counterclaims are compulsory. Nevertheless, the Court notes that the Gardners' First Amended Complaint is factually grounded in the totality of the parties' business relationship, even though it seeks a remedy only based on the August 2017 "Ownership Agreement." Viewed from this perspective, everything Larkin has raised appears to arise from the same ongoing "transaction or occurrence," making all of the Larkin Pleading potentially compulsory pursuant to Fed. R. Civ. P. 13(a).

13(b), when read together, embrace any claim a defending party may have against an opponent."). While the Court retains the discretion to refuse to entertain a permissive counterclaim when allowing it would unduly complicate the litigation, id., in the circumstances of this case, I find that Larkin's approach to joinder is entirely consistent with the purpose and spirit of Rule 13 to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. Carteret Sav. & Loan Ass'n v. Jackson, 812 F.2d 36, 38 (1st Cir. 1987); see also 6 Wright & Miller, Federal Practice and Procedure § 1403 (3d ed.) ("Under Rule 13 the court has broad discretion to allow claims to be joined in order to expedite the resolution of all the controversies between the parties in one suit."). The Gardners' argument that the Larkin Pleading must be dismissed as to Johnny and David Gardner should be rejected.

As to the joinder of John Sr. as a third-party defendant pursuant to Fed. R. Civ. P. 14, the Gardners correctly point out that this Rule limits joinder to a party "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Because Larkin has not pled that any of the third-party defendants (John Sr., CBI and CBWM) are subject to secondary liability with respect to the claims asserted by Johnny and David Gardner against him, the Gardners argue that the portion of the Larkin pleading dedicated to the third-party complaint must be dismissed in its entirety. While the Gardners are right that Larkin has incorrectly characterized his claims against John Sr., CBI and CBWM as third-party claims instead of counterclaims, they are wrong that the result should be dismissal.

Larkin is not seeking indemnity or contribution from any the three third-party defendants for any claims that Johnny and David Gardner asserted against Larkin, which is the purpose of Fed. R. Civ. P. 14. "[A] third party complaint 'must set forth a claim of *secondary* liability such that, if the third party plaintiff is found liable, the third party defendant will be liable to him/her

14

under a theory of indemnification, contribution, or some other theory of derivative liability recognized by the relevant substantive law.'" Legion Ins. Co. v. Family Serv., Inc., 561 F. Supp. 2d 232, 236 (D.R.I. 2008) (quoting Toberman v. Copas, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992)) (emphasis in original). To the contrary, Larkin is suing John Sr., CBI and CBWM as additional parties against whom he is asserting the precise same counterclaims that are asserted against Johnny and David Gardner. Therefore, Larkin's labeling of these as third-party claims is incorrect. However, as this Court held in Legion Ins. Co., such mislabeling of third-party claims is not, by itself, a basis for dismissal. Id. at 236; see Voytko v. Ramada Inn of Atlantic City, 445 F. Supp. 315, 325 (D.N.J. 1978) (courts generally recognize that it is "improper to dismiss a claim which raises a cognizable cause of action where that claim is merely mislabeled"). Instead, Legion Ins. Co. instructs that the Court must deploy the correct characterization to ensure that claims that are truly counterclaims do not hit any procedural or jurisdictional trip wires. Id. at 236.

In such a circumstance, Fed. R. Civ. P. 13, which deals with counterclaims, is applicable; in accordance with Fed. R. Civ. P. 13(h), the appropriateness of joinder is addressed by "Rules 19 and 20[, which] govern the addition of a person as a party to a counterclaim or crossclaim." Legion Ins. Co., 561 F. Supp. 2d at 236. Rule 19 deals with mandatory joinder. It requires the joinder of what are commonly known as "necessary" and "indispensable" parties and, if joinder is not "feasible" or would "deprive the court of subject-matter jurisdiction," Fed. R. Civ. P. 19(a), it provides for dismissal if the absent party is "indispensable" in the sense that the action ought not proceed in that party's absence. Fed. R. Civ. P. 19(b); see Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989) (court must "decide whether considerations of fairness and efficiency . . . require that a particular person be joined as a party" and, if the party

15

cannot be joined, "whether it is so important, in terms of efficiency or fairness, to join this [party], that, in the [party's] absence, the suit should not go forward at all"). Rule 20 deals with permissive joinder. It allows additional parties to join as plaintiffs or to be joined as defendants, if the rights that they assert or that are asserted against them "aris[e] out of the same transaction [or] occurrence;" and "any question of law or fact common to all plaintiffs [or defendants] will arise in the action." Fed. R. Civ. P. 20(a)(1) & (2). Both Rules 19 and 20 are procedural rules. Neither confers jurisdiction where it does not exist. Thus, a party may not be joined where joinder would destroy subject matter jurisdiction. See Legion Ins. Co., 561 F. Supp. 2d at 237. If jurisdiction is founded on diversity of citizenship, dismissal is required when a non-diverse party is joined unless the court has supplemental jurisdiction over the claims involving that party. Id. Further, nor does the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, create an independent basis for subject matter jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).

In this case, the jurisdictional basis for Larkin's counterclaim against Johnny and David Gardner is diversity of citizenship pursuant to 28 U.S.C. § 1332(a) – Larkin is a citizen of Connecticut and the Gardners are Rhode Islanders. The same is true for John Sr., also a Rhode Islander, and CBI, a Rhode Island corporation. Therefore, there are no jurisdictional barriers to treating John Sr. and CBI as counterclaim defendants. Procedurally, the Court need not struggle with whether the claims against them are compulsory or permissive because their joinder is plainly correct under Fed. R. Civ. P. 20. The claims against John Sr. and CBI arise about of the "same transaction [or] occurrence," with common questions of law and fact as those that arise in the counterclaims against Johnny and David Gardner because they are identical. Further, the counterclaim itself arises out of the totality of the parties' business relationship, which is also the

16

foundation for Johnny and David Gardner's original complaint, despite its focus on the "Ownership Agreement." Viewed from this perspective, everything in the Larkin Pleading appears to arise from the same ongoing transaction or occurrence as the complaint brought by Johnny and David Gardner against Larkin and the counterclaim brought by Larkin against Johnny and David Gardner. Therefore, the counterclaims against John Sr. and CBI, although mislabeled as third-party claims, are procedurally and jurisdictionally appropriate. The Court should reject the Gardners' joinder-based request that they be dismissed.

The analysis for the third of the third-party defendants – CBWM – is somewhat more complex.[10] Because Larkin himself is a member of CBWM, which is a limited liability company, joining CBWM as a defendant to Larkin's counterclaim destroys diversity. The solution to this conundrum is found in 28 U.S.C. § 1367, which deals with supplemental jurisdiction. As interpreted in this Circuit (and elsewhere), § 1367 is clear that the absence of diversity does not require the dismissal of Larkin's counterclaim against CBWM because the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367, which permits the addition of new, non-diverse, parties by a defendant, who is not the original plaintiff. Legion Ins. Co., 561 F. Supp. 2d at 238-39 (supplemental jurisdiction over non-diverse third-party defendant, properly re-labeled as counterclaim defendant, permissible pursuant to § 1367); see Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 730 F.3d 67, 73 (1st Cir. 2013) (supplemental jurisdiction not prohibited by § 1367(b) over non-diverse third-party claims asserted by defendant in diversity action; prohibition on joinder of non-diverse party by "plaintiff" in § 1367(b) refers only to "original plaintiff in the action"); Evergreen Indem., Ltd. v.

---

[10] The Gardners have not asserted this argument; that is, they do not separately challenge the Court's exercise of subject matter jurisdiction over CBWM. However, I address the issue *sua sponte* because the Court has a duty to inquire into its own subject matter jurisdiction. Fort Bend Cty., Tex. v. Davis, 139 S. Ct. 1843, 1849 (2019).

Simonsen, Civil No. 1:15-cv-485-JD, 2016 WL 4444735, at *2 (D.N.H. Aug. 23, 2016) (non-diverse claim made by defendant as "third-party plaintiff" does not strip court of jurisdiction).

Whether the Court should exercise supplemental jurisdiction under § 1367 is a different question – it depends on consideration of the factors articulated in that statute. For starters, § 1367(a) directs the Court to examine whether Larkin's claim against CBWM is sufficiently related to Larkin's counterclaims against the Gardners in that they constitute "part of the same case or controversy." See Grimes v. Mazda N. Am. Operations, 355 F.3d 566, 572-73 (6th Cir. 2004) ("district court properly retained subject-matter jurisdiction" when addition of non-diverse third-party defendant arose from "same nucleus of operative fact"). With claims that are identical, the answer to this preliminary question is clearly yes. See Legion Ins. Co., 561 F. Supp. 2d at 238.

Nor do any of the reasons itemized in 28 U.S.C. § 1367(c) – for why a court may in its discretion decline to exercise supplemental jurisdiction – suggest that dismissal is the right course in this case. Section 1367(c) permits a court to decline to exercise supplemental jurisdiction under § 1367(a) if: the claim raises a novel or complex issue of state law; the claim substantially predominates over those over which court has original jurisdiction; the court has dismissed all claims over which it has original jurisdiction; or there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Only the first factor (novel or complex issue of state law) is implicated in the circumstances of this case – the claims against CBWM present novel and potentially complex questions of state law because they implicate the interpretation of R.I. Gen. Laws § 7-1.2-1315 and the applicability of Grady, 2012 WL 171006. However, the precisely same novel and complex questions are also presented in the counterclaims against all of the other counterclaim defendants. Therefore, this does not present a reason for the Court to find

18

in its discretion it should decline to exercise supplemental jurisdiction. Rather, considering "the totality of the circumstances," which includes giving consideration to issues such as "comity, judicial economy, convenience, fairness and the like," it is far more appropriate for the Court to allow these identical claims against CBWM to proceed. See Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 37 (1st Cir. 2003); Evergreen Indem., Ltd., 2016 WL 4444735, at *3.

In light of the foregoing, I recommend that the Court reject the Gardners' joinder challenges to all three of the third-party defendants and allow the claims against them to remain pending, albeit characterized as counterclaims over which the Court may (and should) exercise diversity and, in the case of CBWM, supplemental jurisdiction.

## III. CONCLUSION

Based on the foregoing, I find that the Gardners' motion to dismiss (ECF No. 58) pinpoints no basis for dismissing any Counts of the Larkin Pleading, and as a result, I recommend that the Court deny the motion.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 13, 2019