UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN GARDNER, IV; and DAVID )
GARDNER, )
    Plaintiffs, )
)
v. ) C.A. No. 19-139-JJM-PAS
)
JAMES R. LARKIN, individually and )
as Managing member of the )
BlueShield Window Systems, LLC; and )
BLUESHIELD WINDOW SYSTEMS, )
LLC, )
    Defendants. )

ORDER

The Court has thoroughly conducted a de novo review of all the papers filed by both parties, and the Report and Recommendation of Magistrate Judge Patricia A. Sullivan ("R&R") (ECF No. 156) as well as the objection thereto. ECF No. 168. For the reasons stated therein the Court adopts the R&R, the findings of facts and conclusions of law, in total.

The Court finds that Mr. Larkin has a strong likelihood of success on the merits of all of his substantive claims; that he and the Companies will suffer irreparable harm without the injunction; and that the public interest is best served by issuing an injunction.

Mr. Larkin's Motion for a Preliminary Injunction mandating that Mr. Larkin be reinstated by both Custom Built, Inc. ("CBI") and Custom Built Windows Manufacturing, LLC ("CBWM"), at an initial salary of $2000 per week paid by each

of the Companies based on the *status quo ante* (see ¶ 72 of the R&R), with benefits consistent with those afforded to the Gardners; that the *Gardner III* injunction order (ECF Nos. 124, 135) mandating that Mr. Larkin's health insurance be restored and that his rights of access to the books and records of the Companies be respected, shall continue during the litigation; that Mr. Larkin and the Gardners shall be enjoined from acting as officers of CBI or managers of CBWM; and that the Gardners shall be enjoined from taking any action to enforce the Third Note or to assign the Third Note to any other person or entity. To the extent that the November 26, 2019, Order (ECF No. 121) required weekly meetings, it is vacated, and such meetings may continue or not as the Receiver *pendente lite* shall in his discretion determine.

Based on the same factors (the merits and the balancing of the harms), as well as on the colorable allegation of fraud on the part of the Gardners in procuring the Third Note, which places CBWM's property in imminent danger, on the deadlock of the Companies and on the illegal, oppressive, and fraudulent actions of the Gardners, pursuant to *Consol. Rail Corp. v. Fore River Ry. Co*, 861 F.2d 322, 326-27 (1st Cir. 1988), and guided by R.I. Gen. Laws § 7-1.2-1323, the Court GRANTS Mr. Larkin's Motion for Appointment of a Receiver *pendente lite* (ECF No. 18) and appoints Attorney Theodore Orson, as the Receiver *pendente lite* of CBI and CBWM, pursuant to the terms previously established by the Court, including for *ex parte* contact and the preservation of the attorney client privilege. ECF No. 26 at ¶¶ 14-16; ECF No. 114 at 3-4. He is directed to file a bond for $10,000 with surety authorized to do business in Rhode Island conditioned on his well and true performance of the duties

of the office. The Receiver shall file the bond within ten days of this Order. By contrast with the more limited powers conferred on him in the October 31 Order (ECF No. 114 at ¶¶ 1-3), in accordance with the instructions set forth below, the Receiver *pendente lite* shall assume the power to manage and operate CBI and CBWM and to replace their officers and members respectively for the period while this litigation is pending or until the owner deadlock is resolved. Nevertheless, this receivership appointment is specifically cabined to reflect that its purpose is to continue to facilitate the maintenance of the *status quo ante* and the ongoing viable operations of CBI and CBWM during the period when the owners are deadlocked and internal dissension is adversely impacting operations and only until the conclusion of this litigation.

The Receiver *pendente lite's* first instructions are:

1. In his discretion, as needed to perform his duties, the Receiver *pendente lite* shall continue to use the Financial Consultant, whose engagement was approved by Text Order of October 31, 2019.

2. Using the method outlined in Report III, (ECF No. 140 at ¶¶ 63-64), the Receiver *pendente lite* shall promptly engage a chief executive officer (the "CEO") on behalf of both Companies to manage and operate them, including to deal with their legal and fiduciary obligations (such as legal representation in this litigation) as the Receiver *pendente lite* or the CEO may deem necessary and appropriate given the temporary nature of the receivership. The CEO shall report to the Receiver *pendente*

*lite* with respect to the CEO's responsibilities as set forth below and with respect to such other duties and responsibilities as the Receiver *pendente lite* shall direct.

3. The CEO shall implement the reinstatement of Mr. Larkin as an employee of CBI as the senior middle-manager in the position of "Sales Manager" of all CBI locations, and as an employee of CBWM in the position of "Sales Agent." Upon reinstatement as "Sales Manager" of CBI, Mr. Larkin shall report directly to the CEO. Upon reinstatement as "Sales Agent" of CBWM, Mr. Larkin shall report to whomever the CEO may direct. Consistent with the need to develop a transition plan and to address that plan with other employees, the CEO shall determine the date on which Mr. Larkin will return to work at CBI and CBWM and shall determine the location of his office and the allocation of his time between CBI and CBWM.

4. The CEO shall implement the removal of Johnny Gardner as an officer of CBI and shall transition him to employment solely at CBWM so that he has no further responsibilities at CBI when Mr. Larkin resumes active employment for CBI. The CEO shall set the initial salaries for each of the Gardners (Johnny, David and John Sr.) at $2000 per week paid by CBWM based on the *status quo ante* (R&R at ¶ 72 ), with retention of existing benefits. The CEO, in consultation with the Gardners, shall determine the job descriptions for each of the Gardners at CBWM and decide which of them reports directly to the CEO.

5. The CEO shall determine what marketing model to use for CBI and may transition to whatever plan the CEO believes to be prudent and in the best interest of CBI.

6. Under the supervision of the Receiver *pendente lite*, with assistance from the Financial Consultant and consistent with the recommendations in Report III, (ECF No. 140 at ¶¶ 38-39, 52-53), the CEO shall focus on improving the financial practices of CBI and CBWM, which shall include the development of forecasts and monthly reports as directed by the Receiver *pendente lite* and the oversight of the check book and accounting methods, including intercompany accounts, and may include the replacement of staff as the CEO may determine to be in the interest of CBI and CBWM. Also, under the supervision of the Receiver *pendente lite*, the CEO shall discharge the obligation of the Companies to provide access to their books and records to all owners.

7. If, at any time, the CEO (or the Receiver *pendente lite* or his Financial Consultant) determines that either CBI or CBWM will not be able to pay its obligations as and when they become due in the ordinary course, the CEO shall notify the Receiver *pendente lite*, and the Receiver shall petition for instructions recommending next steps.

8. The CEO is authorized to make senior level business and strategic decisions about CBI and CBWM, including, without limitation, the hiring and firing of employees (consistent with any contractual obligations) and the appropriate use of offices. The CEO is further authorized to enter into contracts on behalf of CBI and CBWM, or to delegate the authority to do so to Mr. Larkin, the Gardners or any employee or agent of CBI and CBWM. In making all such decisions, including with respect to contracting authority, the CEO shall consult with the Gardners and Mr.

Larkin, and with the Receiver *pendente lite* and/or his Financial Consultant as the Receiver *pendente lite* may deem appropriate. The CEO is specifically authorized to determine whether Mr. Larkin's reinstatement or Johnny Gardner's transfer to CBWM makes any other employee expendable and to terminate or modify the employment, mindful of any contractual commitments and applicable law.

9. With respect to Mr. Larkin and the Gardners, if any of them refuses to abide by decisions made by the CEO regarding CBI or CBWM, the CEO is authorized to terminate that individual's employment.

10. If the CEO determines that it would be in the business interest of CBI or CBWM to terminate Mr. Larkin or to terminate one or more of the Gardners from one or both of the Companies, and that the business interest of the respective Company cannot reasonably be achieved so that it does not adversely impact the reasonable expectations of an owner to continued employment, the CEO is authorized to do so. Relatedly, if the CEO determines that Mr. Larkin or any of the Gardners are not providing sufficient value to CBI or to CBWM to justify their initial salaries or that it would be prudent to reduce any owner's salary based on the needs of the business of CBI and CBWM, including cash flow (which shall include consideration of the costs associated with the engagement of the CEO and the cost of the Receiver *pendente lite* and the Financial Consultant), the CEO is empowered to do so. If the CEO takes any of these actions, he or she is authorized immediately to reassess how CBI and CBWM allocate profits to their shareholders/members and, after taking direction from the Receiver *pendente lite*, based on the interests of the Companies

and on the reasonable expectations of the owners, may establish an different approach, which may include payment of salaries solely based on the value of services rendered with periodic distributions to owners as appropriate.

11. The Receiver *pendente lite* shall continue to act as custodian of the Third Note and shall continue to have the power to take actions sufficient to protect CBWM from enforcement of the Third Note.

12. If the Receiver *pendente lite* concludes that a business valuation to determine the relative values of CBI and CBWM is necessary to facilitate the business interests of CBI and CBWM, including, without limitation, their interests here, he is specifically authorized to engage an expert for that purpose, following consultation with Mr. Larkin and the Gardners.

In conclusion, the Court GRANTS in part and DENIES in part the Emergency Motion (ECF No. 18); the Court enters a Preliminary Injunction as set forth above; and the Court appoints Attorney Theodore Orson as Receiver *pendente lite* subject to the terms, limitations, and instructions set forth above.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

March 30, 2020